**FILED**

JUL 1 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF COLUMBIA

NORMAN JOHN HAWRELAK, # 28353-086
      Petitioner-Plaintiff,
BIG SPRING CORR. CTR. 2001 Rickabaugh DR.
      vs. BIG SPRING, TX. 79720

JERRY EKBERG, WARDEN,
BIG SPRING CORRECTIONAL CENTER,
    and

HARLEY G. LAPPIN, DIRECTOR,
FEDERAL BUREAU OF PRISONS,
      Respondent's-Defendant's.

Case No.: _____

PETITION FOR A WRIT OF
HABEAS CORPUS

PURSUANT TO TITLE
28 U.S. CASE NUMBER  1:05CV01403

JUDGE: Reggie B. Walton

DECK TYPE: Habeas Corpus/2255
/2/

DATE STAMP: 07/■/2005

COMES NOW Petitioner, NORMAN JOHN HAWRELAK, (hereinafter "Mr. Hawrelak"), in propria persona, with this instant Petition for a Writ of Habeas Corpus, pursuant to Title 28 U.S.C. § 2241. Mr. Hawrelak is in custody for an act done or omitted pursuant to an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States.

### PRELIMINARY STATEMENT

#### I

The Petitioner is a federal prisoner currently housed at the BIG SPRING CORRECTIONAL CENTER, whose statutory and due process rights are being violated by the Federal Bureau of Prisons' (hereinafter "BOP") misinterpretation of Title 18 U.S.C. § 3624(b), which deprives the Petitioner of eligibility for the fifty-four (54) days of good time credit for each year of his term of imprisonment, to which he is statutorily entitled.

1

**JURISDICTION**

**II**

This Court has jurisdiction over this action pursuant to **Title 28 U.S.C. § 2241** because the Petitioner's term of imprisonment in federal custody is being determined in violation of the Constitution and laws of the United States. The Petitioner invokes the jurisdiction of this Court pursuant to **28 U.S.C. § 1331** in that the action arises under the Constitution and laws of the United States, and **28 U.S.C. § 1651(a)**, and seeks corrective action by officers and employees of the United States in their official capacity.

The Petitioner also invokes the jurisdiction of this Court pursuant to **28 U.S.C. § 1343(4)** in that the Petitioner seeks to redress deprivation of rights authorized by both the Constitution and federal statutes.

**PARTIES**

**III**

The Petitioner, NORMAN JOHN HAWRELAK, a federal prisoner, is presently confined at BIG SPRING CORRECTIONAL CENTER (hereinafter "BSCC") pursuant to a Judgment and Commitment Order issued by the UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE, **Case No. CR-98-0619L-001.**

JERRY EKBERG, the WARDEN of BSCC, is located at: 1701 Apron Drive, Big Spring, Texas 79720, and is responsible for the over-all administrative and security supervision of the facility, through the Federal Bureau of Prisons, an agency of the United States Department of Justice, and is accountable for the Petitioner's custody at the BSCC.

HARLEY G. LAPPIN, the DIRECTOR of the FEDERAL BUREAU OF PRISONS, is located at: 320 First Street N.W., Washington, DC 20534, and he and his agents are responsible for designating the place of the Petitioner's imprisonment and for the agency's interpretation and enforcement of the federal statute governing the earning of good time credits, and for promulgating and enforcing a policy which is the proximate cause of the unlawful restraint of the Petitioner's Liberty.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES: STATEMENT OF FACTS

### IV

The Petitioner has exhausted all administrative remedies seeking redress regarding the Respondent's unlawful restraint of Petitioner's Liberty.

On December 20, 2004, Petitioner presented a grievance to BRICK TRIPP, FACILITY DIRECTOR of BSCC's Flightline Unit re the instant matter, seeking redress of the Petitioner's sentence mis-calculation. [See attached: Central Office Administrative Remedy Appeal, marked as "Regional Administrative Remedy Appeal **EXHIBIT 2**"]

On December 22, 2004, Petitioner received a MEMORANDUM in response to the above grievance from ROBIN BARNES, ACTING FACILITY DIRECTOR of BSCC's Flightline Unit, denying correction of his sentence mis-calculation, stating: "Your sentence was computed in accordance with procedures mandated by the Bureau of Prisons and is not open to interpretation at the institution level." [See attached: Central Office Administrative Appeal, marked as "Regional Administrative Remedy Appeal **EXHIBIT 1**"]

3

On January 12, 2005, Petitioner presented a Regional Administrative Remedy Appeal of BSCC's adverse decision to the South Central Regional Office of the BOP in Dallas, Texas, wherein he raised the issue of whether the BOP's method for calculating good time credits is consistent with the language of the statute (18 U.S.C. § 3624(b)), and whether 18 U.S.C. § 3624(b) requires the BOP to calculate a prisoner's good conduct time on the basis of the prisoner's term of imprisonment rather than on the time he has actually served. [See attached: Central Office Administrative Remedy Appeal **EXHIBITS** section, titled "Regional Administrative Remedy Appeal, CASE NUMBER: 365570-R1"]

On February 24, 2005, Petitioner received a Response to the above Regional Administrative Remedy Appeal from C.C. FLANAGAN, signing for JAMES E. BURRELL, ADMINISTRATOR, Privatization Management Branch of the BOP, denying the Appeal, stating: "Your sentence has been computed in accordance with existing policy and the BOP will not make any adjustments to the calculation of your GCT [Good Conduct Time] unless you obtain a court order affecting your sentence." [See attached: Central Office Administrative Remedy Appeal **EXHIBITS** section, titled "Regional Administrative Remedy Appeal 365570-R1, Part B Response" dated: 2/1/05]

On March 10, 2005, Petitioner presented a Central Office Administrative Appeal of C.C. FLANAGAN's adverse decision to the Central Office of the BOP in Washington, D.C., wherein he raised the issue of whether the BOP's method for calculating good time credits is consistent with 18 U.S.C. § 3624(b), as in the previous appeal. [See attached: Central Office Administrative Appeal of Case No. 365570-R1, dated: March 2, 2005]

On May 24, 2005, Petitioner received a Response to the above Central Office Administrative Remedy Appeal from HARRELL WATTS, AD-MINISTRATOR, National Inmate Appeals, Office of General Counsel of the BOP in Washington, D.C., denying the Appeal, stating: " * * * The institution properly computed your sentence and correctly applied BOP's method for awarding good conduct time." [See attached: "Administrative Remedy No. 365570-A1, Part B - Response, dated: May 2, 2005"]

On the subject matter of the Bureau of Prisons Administrative Remedy Program, **28 C.F.R. Chapter V, § 542.15 Appeals, at (a) Submission,** provides in pertinent part: "Appeal to General Counsel is the final administrative appeal."

Therefore, the Petitioner has exhausted all administrative remedies prior to bringing this instant action.

### STATEMENT OF FACTS

### V

On September 10, 1999, Robert S. Lasnik, U.S. District Court Judge for the Western District of Washington, sentenced NORMAN JOHN HAWRELAK to a term of imprisonment of 97 months upon his conviction of violation of 18 U.S.C. § 1956a(2) and (2) "Money Laundering" in **UNITED STATES OF AMERICA vs. NORMAN JOHN HAWRELAK, Case No. CR98-0619L-001.**

Mr. Hawrelak has been in custody in connection with this offense since September 29, 1998.

**Title 18 U.S.C. § 3624(b)** provides that "a prisoner who is serving a term of imprisonment of more than 1 year ... may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment."

5

Under BOP policy, the maximum allowable good time credit that can be awarded to a prisoner sentenced to 1 year and 1 day is approximately 47 days because the BOP bases its calculations on the actual time served in prison, rather than on the term of imprisonment imposed, as set out in their **Program Statement 5880.28** (June 20, 1997).

The BOP has calculated Mr. Hawrelak's sentence according to Program Statement 5880.28 to reflect a potential award of 380 days of good time credit, and projected his release date as <u>October 13, 2005</u>.

Were Mr. Hawrelak granted relief, he would be entitled to earn <u>**436.5**</u> days of good time credit as provided for in **18 U.S.C. § 3624(b)**, rather than the <u>380</u> days provided for under BOP policy.

**STATEMENT OF LAW**

**VI**

Mr. Hawrelak, having been sentenced to a term of imprisonment of eight (8) years and one (1) month, is entitled under **18 U.S.C. § 3624(b)** to earn **54** days of good time credit for each year of his term of imprisonment.

Mr. Hawrelak is statutorily entitled to earn 54 days of credit for each year of his term of imprisonment because the plain language of the statute provides that "a prisoner who is serving a term of imprisonment of more than 1 year ... may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment." **18 U.S.C. § 3624(b)**.

The BOP's interpretation is contrary to the unambiguous intent of Congress that prisoners are eligible to earn 54 days of good time

6

credit for each year of the term of imprisonment. **Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984); and United States v. LaBonte, 520 U.S. 751, 762 n.6 (1997).**

Even if the statute were ambiguous, the BOP's interpretation is not entitled to deference because the rule of lenity must be used in construing an ambiguous penal statute. **Bifulco v. United States, 447 U.S. 381, 387 (1980).**

The conduct of HARLEY G. LAPPIN, Director of the Federal Bureau of Prisons, and his agents in promulgating a policy denying NORMAN JOHN HAWRELAK eligibility to earn the statutory maximum credit of 54 days--and barring good time credit of no more than 47 days--deprives NORMAN JOHN HAWRELAK of rights conferred by **18 U.S.C. § 3624(b),** as well as the Equal Protection and Due Process Clauses of the Fifth Amendment to the United States Constitution.

### INTRODUCTION

The statute governing the subject matter of good time credits is **18 U.S.C. § 3624(b),** wherein Congress plainly stated that federal prisoners serving more than a one year **"term of imprisonment"** are to receive credit **"beyond the time served"** of up to 54 days at the end of each year of the **"term of imprisonment." "Term of imprisonment"** is uniformly understood to mean the sentence imposed in the Judgment and Commitment Order. Thus, a 366-day (1 year and 1 day) term of imprisonment, minus **54** days credit for good time, equals **312** days incarceration. Despite this clear language, Mr. Hawrelak has only been credited with **47** days of good time credit for each year of his "term of imprisonment."

7

The BOP made a fundamental error in applying the statute: the
BOP administratively substituted "year served" for **"term of imprison-
ment."** Rather than simply subtracting 54 days from the term of impri-
sonment of a year and a day, the BOP resorted to a circular series of
mathematical computations that even the BOP describes as "arithmetical-
ly complicated" to reach the conclusion that **54** days good time credit,
on a sentence of a year and a day, equals **47** days good time credit.
This result is foreclosed by the plain meaning of the statute and
other basic principles of statutory construction.

## PROCEDURAL BACKGROUND

Mr. Hawrelak was convicted in the Western District of Washington
of 18 U.S.C. § 1956a(2) and (2) "Money Laundering," and received a
sentence of 97 months incarceration on September 10, 1999, in **UNITED
STATES OF AMERICA vs. NORMAN JOHN HAWRELAK, Case Number: CR98-0619L.**
Mr. Hawrelak is currently housed at the BIG SPRING CORRECTIONAL CENTER
in Big Spring, Texas.

Mr. Hawrelak was advised by the BOP that he would receive **380** days
good time credit, based on a policy that allows a maximum of only **47**
days for each year of the term of imprisonment.

**I.  The Plain Meaning of 18 U.S.C. § 3624(b)(1) Provides That  Mr.
Hawrelak Should Receive 54 Days Credit On The "Term Of Imprisonment."**

The statute governing the question of good time credits is **18 U.S.C.
§ 3624(b)(1).**  That statute provides in pertinent part:

"[A] prisoner who is serving a term of imprisonment of more
than 1 year ... may receive credit toward the service of
the prisoner's sentence, beyond the time served, of up to

54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term ... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

Contrary to the statute's use of **"term of imprisonment"** as the operative time, in Program Statement 5880.28, the BOP has established a procedure whereby a prisoner's good time credit is not awarded on the basis of the length of the sentence imposed, but rather on the number of days actually "served." **28 C.F.R. § 523.20; P.S. 5880.28 at 1-48:**

"It is essential to learn that GCT **is not** awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served. ..." [emphasis in original]

Under the Program Statement, a prisoner sentenced to a one year and one day term of imprisonment earns not **54** days of good time credit, but only **47** days.

The plain language of the statute compels the result Mr. Hawrelak seeks. The statute itself refers not to "time served" but to **"term of imprisonment"** as the basis for calculating good time credits. When a statute speaks with clarity to the issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished. **Pavelic & LeFlore v. Marvel Group,** 493 U.S. 120 (1989); **Rubin v. United States,** 449 U.S. 424, 430 (1981). As stated in **United States v. Ton Pair Enterprises, Inc.,** 498 U.S. 235 (1989):

9

"Plain meaning of legislation should be conclusive, except in rare cases in which literal application of statute will produce result demonstrably at odds with intention of its drafters; in such cases, intention of drafters, rather than strict language, controls."

See generally: Sutherland Stat. Const. § 46.01 (5th Ed.)

Here there is no ambiguity.  The statute clearly states that prisoners may receive 54 days good time credit for every year of their "term of imprisonment." 18 U.S.C. § 3624(b).   The BOP's policy of allowing good conduct credit for only the time actually "served" is contrary to the statute's plain meaning.

The Supreme Court has stated that where "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984).  The first step of analysis under Chevron is a determination whether Congress has plainly stated its intent. United States v. LaBonte, 520 U.S. 751, 762 n.6 (1997);   McLean v. Crabtree, 173 F.3d 1176, 1182-83 (9th Cir. 1999).  Once that statute is found to be unambiguous, no deference is  owed  to  the  agency. LaBonte, supra; see also I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987) (ordinary and obvious meaning is not to be lightly discounted); Russello v. United States, 464 U.S. 16, 23 (1983) (it is generally presumed that Congress acts intentionally and purposely in the language it chooses.  Nor may an agency ignore an unambiguous  statutory definition in favor of its own preferred definition.  Orca Bay Seafoods

*v.* **Northwest Truck Sales, Inc., 32 F.3d 433 (9th Cir. 1994)**(regardless of policy justification, Secretary of Transportation may not exempt certain vehicles from clear statutory definition). Because Congress used the unambiguous phrase **"term of imprisonment"** in *Id* Section 3624(b), the BOP is simply not permitted to substitute "number of days actually served" [in prison] for "term of imprisonment."

The Program Statement's confusion of year **"served"** for **"term of imprisonment"** is inconsistent with the statute. The relevant phrase, **"term of imprisonment,"** appears in numerous statutes and has a well-established meaning: the period of time imposed in the judgment--not the actual time served in custody. **United States v. Morales-Alejo, 193 F.3d 1102, 1105-06 (9th Cir. 1999)** (distinguishing between "term of imprisonment" and detention); 18 U.S.C. § 4101(b) (defining "imprisonment" as "a penalty imposed by a court under which the individual is confined to an institution"); 18 U.S.C. § 3582 ("term of imprisonment" is determined by sentencing factors).

Particularly relevant to this issue is the language used in 18 U.S.C. § 3621 governing **"Imprisonment of a convicted person"**:

"(a) **Commitment to custody of Bureau of Prisons.**--A person who has been sentenced to **a term of imprisonment** pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons **until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.**" [emphasis added]

11

From this, it is clear that a prisoner is committed to the custody of the BOP "until the expiration of the term imposed," or until earlier released "pursuant to the provisions of Section 3624;" and conclusively not pursuant to a BOP policy.

While Congress directed in the statute that credit be calculated at 54 days per year for each year of a "term of imprisonment," the BOP, both in its regulations and its program statements, substituted the phrase "for each year served."  28 C.F.R. 523.20(a), which discusses good conduct time, provides in pertinent part:

"Pursuant to 18 U.S.C. § 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served. This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year ...

* * *

(a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall award:

(1) 54 days credit for each year served  (prorated when the time served by the inmate for the sentence is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; ..."

Thus, all prisoners are only given credit for time "served," not on the "term of imprisonment."  Program Statement 5880.28 makes the

12

same fundamental error, establishing a formula for awarding the full
54 days of good conduct time "for each full year served on a sentence
in excess of one year." The BOP--contrary to the plain dictate of
the statute--ignores the term of imprisonment: "It is essential to
learn that GCT [good conduct time] **is not** awarded on the basis of the
length of the sentence imposed, **but rather on the number of days
actually served.**" P.S. 5880.28 at 1-48.

The last sentence of **18 U.S.C. § 3624(b)(1)** provides:

"Credit for the last year or portion of the year of the term of
imprisonment shall be prorated and credited within the last
six weeks of the sentence."

The provision relates to the time at which good time will be
credited to an inmate and recognizes that sentences are not imposed
solely in full year increments. The provision states that sentences
will be "prorated" for portions of the year of the sentence imposed.
Critical to this analysis is Congress' continued use of "**term of im-
prisonment.**"

Prorated should be viewed as having its common dictionary defini-
tion. As set out in the American Heritage College Dictionary (3rd.
Ed.), prorate means "to divide, distribute, or assess proportionately."
See also BLACK'S LAW DICTIONARY (6th Ed.) (Prorate: to divide, share
or distribute proportionately, to assess or apportion pro-rata). Con-
gress specifically directed that the proration be based on the **term
of imprisonment**" imposed by the court, not the time served by the in-
mate.

13

In its regulations and program statements, the BOP persisted in the mistake, even claiming that Congress' directive is "impossible." Program Statement 5880.28 at 1-45. The error by the BOP substituted distinct phrases related to the time actually "served." While the difference caused by the switch in terminology is not huge--amounting to seven days--each day of incarceration is very significant to the individual affected.

II.  **The Plain Meaning Of The Statute Is Supported By The Legislative History, Which Demonstrates That Congress Specifically Intended To Reject The Complexities Of Calculating Good Time Credit Only For Actual Time Served Rather Than Basing Such Credit On The "Term Of Imprisonment."**

The history of the good time statute demonstrates that Congress consciously amended the statute to calculate good time against the sentence imposed by the judge. When Congress amends a statute, Congress intends its amendment to have real and substantial effect. **Stone v. I.N.S., 514 U.S. 386, 397 (1995).** This basic rule of construction, approved by the Supreme Court, demonstrates the statute is not ambiguous.

Between 1902 and 1948, federal good time statutes allowed a well-behaved prisoner to serve less time by receiving credit for good time against "the term of his sentence," **18 U.S.C. § 701 (1944).** The time was deducted not from the time actually spent in prison, but from the term of the sentence in increments dependent upon the length of the term.

14

In 1948, Congress did so not to diminish the number of days a prisoner could earn, but to address when the credit accrued. This language "was interpreted as requiring good time to be computed on the basis of actual time served rather than on the basis of the term of the sentence as imposed by the court." **H.R. Report 86-935** (Aug. 18, 1959), **reprinted in 1959 U.S.C.C.A.N. at 2519.** The precise problem that is occurring now developed first in 1948: "The effect of this interpretation is to require well-behaved prisoners to serve longer periods of confinement than they would under the method of computation which had been used through half a century." **H.R. Report 86-935** (Aug. 18, 1959), **reprinted in 1959 U.S.C.C.A.N. at 2519.** To solve this problem, Congress, in 1959, deleted the time served language and returned to the methodology of crediting against the sentence, not time served. **H.R. Report 86-935** (Aug. 18, 1959), **reprinted in 1959 U.S.C.C.A.N. at 2519.**

In the current good time statute, Congress continued the pre-1948 and post-1959 formulation, eschewing language such as **"credited as earned and computed monthly"** and substituting **"term of imprisonment."** Congress made its intent clear by using 54 days--which is 15% of 365 days. As Senator Biden, a sponsor of the amendment, explained:

> "I was the co-author of that bill. In the Federal courts, if a judge says you are going to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time--8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years."

**141 Cong. Rec. S2348-01 (Feb. 9, 1996)**(emphasis added); **see**

15

also 140 Cong. Rec. S12, 349 (1994) ("So my Republican friends in a compromise we reached on the Senate floor back in November ... said no State can get any prison money unless they keep their people in jail for 85 percent of the time just like we do at the Federal level in law written by yours truly and several others.")(**statement of Sen. Biden**).   Although the **85%** rule has been universally recognized by federal lawyers and sentencing judges as the measure of good time, the rule is not honored. **No federal prisoner, no matter how virtuous, ever served less than 87.2% of the sentence imposed.** Thus, Congress specifically considered the loss of good time resulting from calculating against time actually served and rejected that method.

Contrary to Congressional intent and the plain meaning of **"term of imprisonment,"** the BOP explicitly rejects crediting good time against the sentence imposed.  Instead, and without authority, the BOP, both in its regulations and its program statement, substituted for **"term of imprisonment"** the phrase "for each year served." **28 C.F.R. § 523.10(a)**; **Program Statement 5880.28 at 1-48** ("it is essential to learn that GCT [good conduct time] **is not** awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served...")(emphasis in original).  By only giving credit against actual time served, the calculation must be based on a complex formula, described by the BOP as "arithmetically complicated," that reduces the good time by seven days a year.

Program Statement 5880.28 at 1-40 to 61B (July 19, 1999).[1]

---

[1]For example, in the pristine case of a sentence amounting to a year and a day, the BOP maximum award of good time is **47** days. The BOP's short form of the

The BOP's formulation cannot be reconciled with the clear Congression-
al intent that good time credit be as easily calculated as a 15% tip.
Congress clearly showed its intent to require 85% by the number it-
self: 54 is 15% of 365. In an earlier version of the good time statute,
Congress used 36 days, "approximately 10%." **Sen. Rep. 28-225, reprinted
in 1984 U.S.C.C.A.N. at 3329-30.**

The final version simply added 5% to the maximum amount allowed.

**III.   Even If The Statute Were Ambiguous, Supreme Court Authority
        Requires Application Of The Rule Of Lenity To This Penal
        Statute, Not Deference To An Executive Agency**

The Ninth Circuit found that the statute was ambiguous, and de-
ferred to the BOP's interpretation under **Chevron.** **Pacheco-Camacho,
272 F.3d at 1269-70.** Even assuming the **"term of imprisonment"** is
ambiguous, the Supreme Court, especially Justice Scalia, provides
clear authority pointing to the error of the Ninth Circuit's ways.
The rule of lenity must be used in construing an ambiguous   penal

---

day, the BOP maximum award of good time is **47** days. The BOP's short form of the
formula is as follows:

365 / (54) = .148
366 x .148 = (54).168 (366 + (54) = 420)
366 - (54) = 312 x .148 = 46.176 (312 + 47 = 358)
366 - 46   = 320 x .148 = 47.36  (320 + 47 = 367)
366 - 47   = 319 x .148 = 47.212 (319 + 47 = 366)

Program Statement 5880.28 at 1-40 to 61B (July 19, 1999). In contrast, the statute
calls for **54** days at the end of each year of the term of imprisonment (311 + 54 = 365).

statute.  **Bifulco v. United States, 447 U.S. 381, 387 (1980).**  Defer-
ence to the BOP's administrative construction of an ambiguous   penal
statute "would turn normal construction of criminal statutes upside
down, replacing the doctrine of lenity with the doctrine of severity."
**Grandon v. United States, 494 U.S. 152, 177-78 (1990)** (Scalia, J.,
concurring).  The Ninth Circuit erred in relying on administrative
law principles that apply to statutory silence, rather than criminal
law jurisprudence that controls statutory ambiguity in penal laws.

> 1. **Section 3624(b) Is A Penal Statute To Which The Rule Of
>    Lenity Must Be Applied**

The rule of lenity applies where reasonable doubt persists about
a penal statute's intended scope, even after resort to the language
and structure, legislative history, and motivating policies of the
statute.  **United States v. R.L.C., 503 U.S. 291, 305-06 (1992); Bi-
fulco, 447 U.S. at 387.**  In **Bifulco,** the Supreme  Court  addressed
statutory ambiguity in the punishment provisions of a federal drug
statute.  **447 U.S. at 382-83.**  The defendant asserted that the drug
conspiracy statute did not provide for a special parole term.    The
Court held that the rule of lenity "must" inform construction     of
ambiguous criminal statutes, and the rule of lenity "applies not only
to interpretations of the substantive ambit of criminal prohibitions,
but also to the penalties they impose."  **447 U.S. at 387.**

The credit for good conduct time law is a penal statute located
in the criminal  sentences section of Title 18.  The Supreme  Court
has found that good time statutes are penal in  several   contexts.

18

See **Lynce v. Mathis**, 519 U.S. 433 (1997) (ex post facto); **Weaver v. Graham**, 450 U.S. 24 (1981) (same); **Preiser v. Rodriguez**, 411 U.S. 475 (1973) (habeas corpus). Under well-established precedent, the federal good time law is a penal statute to which the rule of lenity applies.

2.   **Chevron Defense Does Not Apply Under Justice Scalia's Reasoning in Crandon.**

In upholding the BOP's interpretation, the Ninth Circuit applied principles from civil administrative law regarding statutory silence or ambiguity under **Chevron, 467 U.S. 837 (1984)**. Because **Chevron** does not apply to ambiguous criminal statutes, any statutory ambiguity must be resolved in favor of the prisoner under the rule of lenity. The Supreme Court addressed the conflict between administrative construction of criminal statutes and the rule of lenity in **Crandon**.

In **Crandon**, several private executives, who accepted government positions, received payments from their private employer to compensate them for financial loss from their transfers to public employment. The Court had to decide whether a criminal code prohibition on supplemental compensation to government employees barred the payments. The Court ultimately concluded the statute did not prohibit the payments, partly based on the rule of lenity. **Crandon, 494 U.S. at 168.**

In the concurring opinion, Justice Scalia, joined by Justices O'Connor and Kennedy, addressed the weight to be accorded the executive branch's interpretation of the penal statute. The concurring Justices drew a clear line between the executive branch's duty to

19

· implement its interpretation of the statute and the judicial branch's
function to interpret criminal statutes. **494 U.S. at 177** ("The Justice
Department, of course, has a very specific responsibility to determine
for itself what this statute means, in order to decide when to prose-
cute; but we have never thought that the interpretation of those
charged with prosecuting criminal statutes is entitled to deference.")
The concurrence concluded that the executive's construction of a penal
statute "is not even deserving of persuasive effect" because it "would
turn the normal construction of criminal statutes upside down, replac-
ing the doctrine of lenity with the doctrine of severity." **Crandon,
494 U.S. at 178.**

The Sixth Circuit has applied the **Crandon** concurrence to hold
that the rule of lenity, rather than administrative deference, applies
to statutory ambiguity regarding punishment. **Dolfi v. Pontesso, 156
F.3d 696, 700 (6th Cir. 1998).** In declining to defer to the Parole
Commission's interpretation of a statute, the Sixth Circuit stated
that the agency's invocation of Chevron "overlook[s] a crucial dis-
tinction between criminal and civil statutes." **Dolfi, 156 F.3d at 700.**
In criminal statutes, Chevron does not apply because the judicial
branch, not the executive branch, is entrusted with interpretation
of the criminal code.

Judicial deference under **Chevron** in the face of statutory ambigu-
ity is not normally followed in criminal cases ... The rule of lenity
requires a stricter construction of "ambiguity in a criminal statute,"
not deference. When the Department of Justice made a similar argu-
ment in **Crandon v. United States, 494 U.S. 152, 177-78, 110 S.Ct. 997,**

**108 L.Ed.2d 132 (1990)**, Justice Scalia pointed out in a concurring opinion that Chevron does not require the judiciary to defer to executive interpretation of the criminal code. **Dolfi, 156 F.3d** at 700 (citations omitted). The Ninth Circuit is now in conflict with the Sixth Circuit's implementation of the **Crandon** concurrence.

While the BOP has certain tasks delegated to it by Congress, the maximum amount of good time on a term of imprisonment is not so delegated. The agency does not purport to lower the maximum good time; the regulation and program statement only claim to implement the good time statute. The federal courts, not the agency, are the arbiters of the meaning of ambiguous criminal statutes, and executive interpretation under Chevron "is not even deserving of any persuasive effect." **Crandon, 494 U.S. at 177** (Scalia, J., concurring). Interpretation of Section 3624(b) does not involve any expertise to which the court should defer. **Dolfi, 156 F.3d at 700** ("Unlike environmental regulation or occupational safety, criminal law and the interpretation of criminal statutes is the bread and butter of the work of federal courts."). Any ambiguity in the criminal statute establishing the maximum good time credits should be resolved based on the rule of lenity, not the executive branch's tendency toward severity in the treatment of its prosecutorial targets.

The Ninth Circuit's error lies in its confusion of statutory ambiguity and statutory silence. Statutory ambiguity requires application of the rule of lenity. On the other hand, statutory silence permits the agency to fill the void as it sees fit within reason. See, e.g., **Lopez v. Davis, 531 U.S. 230, 242 (2001)**. The BOP in the

21

present case purports to be doing no more than construing the statute; therefore, **Chevron** deference must give way to the rule of lenity.[2] The statute must be read to allow for 54 days of good time credit for each year of the term of imprisonment.

IV.    **When A Court Reviews An Agency's Interpretation Of A Federal Statute, The Threshold Question Is Whether The Interpretation Is Entitled To Deference**

The Supreme Court has applied varying levels of deference depending on the context of the interpretation. E.g., **Alaska Department of Environmental Conservation v. EPA**, —— U.S. ——, 124 S.Ct. 371 (2004) (internal guidance memoranda entitled to "respect" but not "dispositive force"); **Yellow Transportation Inc. v. Michigan**, 537 U.S. 36, 45 (2003)(regulation promulgated after notice and comment entitled to highest level of deference when Congress has expressly authorized agency to promulgate rules). Regardless of the context of the interpretation, the agency is entitled to no deference if Congress has expressed its intent unambiguously in the statute. **FDA v. Brown & Williamson Tobacco Corp.**, 529 U.S. 120, 125-26 (2000). Agencies may

---

[2]    In avoiding application of the rule of lenity to this penal statute, the Ninth Circuit relied on a footnote in Babbit v. Sweet Home, 515 U.S. 867 (1995). Pacheco-Camacho, 272 F.3d at 1271. The reliance is misplaced. The critical distinction is that the sentence in Sweet Home applies to "facial challenges to administrative regulations," not "statutory ambiguity" as claimed in the Ninth Circuit's opinion.

fill gaps in ambiguous statutes; they may not contradict a statute's plain language. Further, a court should conclude that a statute is ambiguous and thus open to gap-filling by agencies "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." **General Dynamics Land Systems, Inc. v. Cline, —— U.S. ——, 124 S.Ct. 1236, 1248 (2004).**

The subject matter at issue here was recently considered in a habeas corpus petition in **White v. Scibana, 314 F.Supp.2d 834 (W.D. Wis. 2004).** In her decision in **White**, Chief Judge Crabb concluded in a prior December 23, 2003 order, that the pivotal clause in § 3624(b) is the one stating that an inmate may earn up to 54 days of good conduct time "at the end of each year of the prisoner's term of imprisonment." That clause raised the question whether the phrase "term of imprisonment" means "sentence imposed" or "time served." If "term of imprisonment" refers to the sentence, an inmate's maximum potential good conduct time could be calculated by multiplying 54 days by the number of years in the sentence. However, if a term of imprisonment is defined by the inmate's actual time served, the number of good time credits that could be earned would be reduced and a more complicated calculation would be required because an inmate that earns good time will not actually serve his full sentence.

As an initial matter, the respondent in **White** challenged the conclusion that that the case turns on an interpretation of "term of imprisonment," arguing that the phrase establishes only "which federal inmates are eligible to earn good time credits against their sentences in the discretion of the Bureau." In rejecting this argu-

23

ment, Judge Crabb stated:

> "It is true that the statute allows good conduct time only
> for those prisoners serving a term of imprisonment of more
> than one year. But the statute says also that the inmate
> may receive 54 days of credit for every "year of the pri-
> soner's term of imprisonment." If "term of imprisonment"
> means "sentence," an inmate would be eligible to receive
> good conduct time for each year of his sentence rather
> than for each year he has served. Thus, I adhere to the
> conclusion in the December 22 order that the bureau has
> no authority to calculate credits on the basis of time
> served if § 3624 unambiguously expresses Congress's in-
> tent to define "term of imprisonment" as "sentence im-
> posed." **Id. 837, 838.**

In isolation, the phrase "term of imprisonment" is arguably
ambiguous. See American Heritage Dictionary of the English Lan-
guage 175 (4th Ed. 2000) (defining "term" to mean both "[a] lim-
ited period of time" and "a period of time that is assigned to a
person to serve"). However, words in a statute are not to be
read in a vacuum; courts must read the statute as a whole to aid
in determining the meaning of each of its parts. **King v. St. Vin-
cent's Hospital, 502 U.S. 215, 221 (1991).** A corollary to this
rule is that identical words used in different parts of the same
statute are presumed to have the same meaning. **Gustafson v.
Alloyd Co., 513 U.S. 561, 570 (1995).**

The phrase "term of imprisonment" is used several times in § 3624. None of the other uses supports a "time served" interpretation of "term of imprisonment." For example, the first sentence of § 3624(a) provides, "A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited ... " This sentence can make sense only if a term of imprisonment is another way of saying the sentence imposed. If "term of imprisonment" means only the time 'actually' served, there would be no need to subtract "time credited" to determine the release date because good conduct time would already be taken into account. This sentence is in essence a calculation for time served: Sentence imposed minus good time credited equals time served. There is no other way to read the provision.

Similarly, the first sentence of § 3624(b) provides that any "prisoner who is serving a term of imprisonment of more than 1 year" may earn good conduct time. (Section 3624(c) also refers to "a prisoner serving a term of imprisonment"). Again, this portion of the statute would make no sense if "term of imprisonment" means the time served. An inmate cannot be "serving" time he has already served. In this context, if Congress had intended "term of imprisonment" to mean "time served," it could have used the clause "a prisoner who **has completed** a term of imprisonment of more than one year." Further, a "time served" interpretation of "term of imprisonment" in this clause would

25

make determining eligibility for good conduct time a perplexing process when the sentence is just over one year. For example, an inmate who would initially be eligible for good time credit because his sentence was 366 days would become ineligible once his good conduct time was taken into account. Even the BOP has interpreted the statute as making good conduct time available when the **sentence** is more than a year. See Program Statement 5880.28, Sentence Computation Manual.

The presumption that terms that have a consistent meaning throughout a single statute may be overcome, as was recently reaffirmed in **Cline, 124 S.Ct. at 1245.** However, in **Cline,** the Court concluded that Congress did not intend to define the word "age" uniformly throughout the Age Discrimination in Employment Act because "age" has "several commonly understood meanings among which a speaker can alternate in the course of an ordinary conversation, without being confused or getting confusing." **Id. at 1246.** Unlike the word "age," the phrase "term of imprisonment" is not a common term in casual conversation. Rather, it is a legal term of art that Congress has employed in dozens of statutes, many of which were part of the Comprehensive Crime Control Act of 1984, the same act in which § 3624 was included. Throughout these statutes, Congress has uniformly used "term of imprisonment" as a synonym for "sentence." E.g., 18 U.S.C. § 3147 ("A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment."); 18 U.S.C. § 3156(a)(3)("The term 'felony' means an offense punishable by a maximum term of im-

26

prisonment of more than one year."); 18 U.S.C. § 3582 (discussing
"factors to be considered in imposing a term of imprisonment.");
18 U.S.C. § 3584(a)("If multiple terms of imprisonment are imposed
on a defendant at the same time..."); 28 U.S.C. § 994(b) ("If  a
sentence specified by the guidelines includes a term of imprison-
ment, the maximum of the range established for such a term shall
not exceed the minimum of that range by more  than 25 per centum.").
It is fair to assume that if Congress had intended to make the cal-
culation for good conduct time contingent on time served rather
than on the sentence imposed, it would not have used a phrase  with
such a clear and consistent meaning throughout the United States
Code.  **Firstar Bank, N.A. v. Faul**, 253 F.3d 982, 990 (7th Cir. 2001)
("[W]here a word is given a consistent meaning throughout the United
States Code, then the courts assume that it has that same meaning in
any particular instance of that word.")

One court has determined that the meaning of "term of imprison-
ment" in § 3624 is ambiguous.  **Pacheco-Camacho v. Hood**, 272 F.3d
**1266 (9th Cir. 2001)**. However, in coming to this conclusion, the
court did not consider how the phrase was used in the first sentence
of §3624(a) and the first sentence of § 3624(b)(1), as well as in
the rest of the criminal code.  Moreover, the court did not take
into account the history of the statute showing that Congress in-
tended good conduct time to be deducted from an inmate's sentence.
In finding the statute ambiguous, the court relied  solely on the
last sentence of § 3624(b)(1), which states that "credit for the
last year or portion of a year of the term of imprisonment shall
be prorated and credited within the last six weeks of the sentence."

27

The court concluded that a "sentence imposed" interpretation of "term of imprisonment" would be "inconsistent" with a requirement to prorate good time credits during the last year of the term. **Pacheco-Camacho, 272 F.3d at 1268-69.**

It appears from the response crafted by the BOP to Mr. Hawrelak's administrative remedy, the bureau is likewise attempting to stand on this erroneous conclusion.

In **White**, Judge Crabb addressed this issue, disagreeing with the conclusion that § 3624(b)(1) is ambiguous because it requires the last year of the term of imprisonment to be prorated, stating:

> "This requirement would support the bureau's interpretation of the statute only if all prison sentences were imposed in whole years. Because defendant's in federal court are sentenced to a term of months rather than years, many sentences will end in a number of months after the last full year. Thus, there is nothing inconsistent between prorating good time for the last year of the term and interpreting "term of imprisonment" to mean the sentence. Regardless of the interpretation of "term of imprisonment," an inmate's good time will have to be prorated when his or her sentence consists of a number of years and some odd months." **Id. at 840.**

In **Pacheco-Camacho,** the court stated that a "sentence imposed" construction would result in a "bonus" to the inmate because he or she will receive credit in advance of earning it. The respondent

28

in **White** made a similar argument.  Judge Crabb continued:

> "However, this argument has force only if one assumes
> that the bureau's interpretation is the correct one.
> If one assumes that "a year" of the "term of impris-
> onment" is a year of the sentence imposed, then an
> inmate has completed a year of the term whenever the
> inmate's time actually served plus good conduct time
> equals 365 days (e.g., 311 days served + 54 days of
> good conduct time = 1 year of the term of imprison-
> ment).  Thus, the inmate still "earns" all of his
> good conduct time, but he does so at a faster rate
> than under the bureau's interpretation of the
> statute."  **Id. at 841.**

Granting the petition, Judge Crabb stated:

> "As noted above, an agency does not have discretion to
> interpret a statute that is unambiguous.  Because I
> have concluded that Congress had the unambiguous in-
> tent to define the phrase "term of imprisonment" to
> mean "sentence imposed," I conclude that the bureau
> did not have the authority to promulgate a regulation
> that uses "time served" as the basis for the calcula-
> tion.  The petition must be granted."  **Id. at 841.**

In her order, Judge Crabb directed respondent Scibana to recalcu-
late White's good conduct time on the basis of each year of his
**sentence** rather than on time actually served.

29

### CONCLUSION

The **White** case sits squarely on all fours with this instant petition of Mr. Hawrelak's. In the instant matter of Mr. Hawrelak's 97 month term of imprisonment, the Bureau of Prisons' calculation of Mr. Hawrelak's good conduct time credit falls far short of the correct amount, viz: 97 month sentence = 8 years and 1 month; 8 years x 54 days = 432 days; 54 days per year divided by 12 months = 4.5 days for the prorated good conduct time for the 1 month beyond the 8 years. Adding the 432 days + 4.5 days = **436.5** days good conduct time credit to be deducted from Mr. Hawrelak's term of imprisonment. Not the 380 days as erroneously calculated by the Bureau of Prisons. [See attached: Central Office Administrative Remedy Appeal **EXHIBITS** section, titled "ATTACHMENT PAGES" at Page 002 of 002]. This is a difference of **56.5** days that the Bureau of Prisons is short-changing Mr. Hawrelak in the instant matter of the sentence calculation.

Were **Mr. Hawrelak granted relief, he would be entitled to earn 436.5 days of good conduct time credit as provided for in** 18 U.S.C. § 3624(b), **rather than the 380 days provided for under BOP policy.**

For all the reasons set forth herein, Mr. NORMAN JOHN HAWRELAK respectfully requests that the Court grant his petition for the writ of habeas corpus and direct the Federal Bureau of Prisons to apply the proper statutory construction to allow for 54 days of good conduct time credit for each year of the term of imprisonment as provided for in 18 U.S.C. § 3624(b), and credit NORMAN JOHN HAWRELAK with **436.5 days** good conduct time against his sentence and release NORMAN JOHN HAWRELAK on **August 17, 2005.**